IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| SANDRA LEE RIVERA, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. CBD-12-1095 |
| MICHAEL J. ASTRUE,[1] Acting Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Sandra Lee Rivera, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claims for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 16) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 18). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion, DENIES

---

[1] Subsequent to the commencement of this litigation, Michael J. Astrue has been replaced as Commissioner of the Social Security Administration by Acting Commissioner Carolyn W. Colvin. United States Social Security Administration, Fact Sheet, http://www.ssa.gov/pressoffice/factsheets/colvin.htm (last visited August 22, 2013).

1

Commissioner's Motion, and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

Plaintiff filed her applications for DIB on March 16, 2009 and SSI on March 31, 2009 with the original alleged onset date of May 19, 2008. R. 132-45. She alleged disabilities including thoracic outlet syndrome, lumbar disk herniation, and carpal tunnel syndrome. R. 132, 139, 170. Plaintiff later amended her onset date to November 24, 2008, during the hearing before the Administrative Law Judge ("ALJ"). R. 41. The Commissioner denied Plaintiff's claims on first review on June 11, 2009, R. 83-87, and upon reconsideration on January 28, 2010. R. 77-80. The ALJ hearing was held on October 19, 2010 and Plaintiff was represented by a non-lawyer representative, Lawrence Pucci. R. 38. On November 22, 2010, the ALJ issued a written decision concluding that Plaintiff was not disabled under the Social Security Act. R. 15-32.

The ALJ evaluated Plaintiff's claims using the five-step sequential process set forth in 20 C.F.R. § 404.1520 (2010), and further explained below. At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 24, 2008, the amended alleged onset date. R. 20. At the second step, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease and thoracic outlet syndrome status-post surgeries. R. 20. The ALJ found that Plaintiff's asthma, chronic obstructive pulmonary disease ("COPD"), and obesity did not qualify as severe impairments. R. 20-21. At the third step, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals" a listing. R. 21. Even though the ALJ did not identify Plaintiff's depression as a severe mental impairment, he did apply the special technique used to evaluate

2

mental impairments. R. 21-23. At the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except that she would need:

> simple, routine, unskilled jobs, SVP2 in nature, with low concentration and low memory due to pain and depression, moderately limited in performing activities of daily living, interact socially, and maintain concentration, persistence, and pace, needing one to two step tasks, with no decision making, judgment, or change in work setting, no production pace rate work, little interaction with coworkers though can be around other employees during the work day, however, with occasional conversation and impersonal interaction with coworkers, essentially isolated jobs with occasional supervision, lift 10 pounds frequently and 20 on occasion, can stand for 30 minutes and sit for 30 minutes consistently on an alternate basis, eight hours a day, five days a week, avoiding heights and hazardous machinery, temperature extremes, humidity, stair climbing, no repetitive neck turning jobs, or fine dexterity and manipulation with hands, odors, gases, fumes, dust, and like substances.

R. 23. The ALJ found that Plaintiff is unable to perform any of her past relevant work as a machine operator, warehouse worker, janitor, and flagger. R. 30. At the fifth step, the ALJ determined that considering Plaintiff's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including mail room clerk (non-governmental) and machine tender. R. 31-32. As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of November 24, 2008, through the date of the decision. R. 32.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council. The Appeals Council denied Plaintiff's request on March 8, 2012, making the ALJ's decision final and appealable. R. 1-4.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2006). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any

3

fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Commissioner of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2010). The Code of Federal

Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## **ANALYSIS**

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's conditions for the following three reasons:

1) The ALJ failed to properly evaluate Plaintiff's mental health impairments.

2) The ALJ failed to support his assessment of Plaintiff's RFC with substantial evidence and did not properly evaluate the medical opinions of her treating physicians and non-medical sources; and

3) The ALJ failed to support the conclusion that other work that Plaintiff can perform exists in significant numbers in the national economy.

As discussed below, the Court agrees that the ALJ's opinion was deficient in certain respects and remands this matter to the Commissioner for further proceedings.

**I.     The ALJ Did Not Properly Apply The Special Technique For The Evaluation Of Mental Health Impairments.**

Plaintiff argues that the ALJ improperly evaluated her mental health impairment by failing to apply the special technique required by the regulations, failing to adequately develop the record, and failing to categorize her depression as a severe impairment. When evaluating a mental impairment, the ALJ is required to follow the special technique set out in 20 C.F.R. §§ 404.1520a, 416.920a (2010), the steps of which track the overall sequential evaluation process. The first step is for the ALJ to evaluate the pertinent signs, symptoms, and laboratory findings to determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The next step is to determine the degree of functional limitation by rating the claimant in four broad areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Next, the ALJ determines the severity of the impairment and whether it meets or equals a listing by comparing the medical evidence and the degree of functional limitation to the criteria for the appropriate mental disorder. 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920a(d)(1)-(2). Finally, if the claimant has a severe mental disorder that does not meet or equal a listing, the

ALJ must determine the mental RFC of the claimant. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

### a. The ALJ failed to apply the special technique in evaluating Plaintiff's mental RFC at steps four and five of the sequential analysis.

The ALJ must document application of the technique by incorporating the pertinent findings and conclusions into the opinion. 20 C.F.R. §§ 404.1520a(e), 416.920a(e). The opinion must "show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). When determining RFC at steps four and five of the sequential evaluation, the ALJ must itemize the "various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments," which are the same four categories listed above: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Social Security Ruling[2] ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment is not the same as the determination of severity at steps two and three, but rather "requires a more detailed assessment" of the four broad categories. *Id*. The ALJ must express the claimant's capacity in terms of work-related functions, such as the ability to understand, carry out, and remember instructions; use judgment in work-related decisions, respond appropriately to supervision, and deal with changes in a work setting. Id. at *6.

While the regulations and Social Security Rulings provide detailed guidance to ALJ's in applying the special technique, the Court must also keep in mind that the burden remains on the claimant in steps one through four of the sequential analysis. See *supra*, Standard of Review.

---

[2] Although not required by statute, the Commissioner publishes the Social Security Rulings which are binding on all components of the Social Security Administration. They represent precedent, final opinions, and statements of policy which the Commissioner has adopted. 20 C.F.R. § 402.35(b)(1) (2011).

7

The ALJ's function-by-function analysis will be deemed adequate if it includes a narrative discussion thoroughly explaining how the functional limitations in the four broad categories are supported by the medical and non-medical evidence. *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *3-4 (D. Md. July 18, 2012) (citing *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011); *Thomason v. Astrue*, No. TMD 08-3403, 2012 WL 707003, at *2 (D. Md. Mar. 2, 2012); *Davis v. Astrue*, No. JKS 09-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 16, 2010).

At step three of the sequential analysis here, the ALJ's application of the special technique was most likely adequate. Without explicitly stating so, the ALJ treated Plaintiff's depression as if it were a medically determinable impairment. R. 21. The ALJ described Plaintiff's self-reported activities of daily living and reviewed treating physician reports from June of 2010 indicating that her depression was controlled by medication and did not impair her ability to concentrate. R. 22. The ALJ rejected the report of Dr. Syed Rizvi because it was not supported by clinical testing or treatment notes and did not document the treating relationship with the patient. *Id*. Although he did so in a rather conclusory fashion, the ALJ then rated Plaintiff in the four functional areas, finding that she had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, and no episodes of decompensation of extended duration. *Id*. Therefore, the ALJ found that Plaintiff did not meet a listing for mental disorders.

In contrast, the ALJ's application of the special technique at steps four and five of the sequential analysis was plainly deficient. Although the ALJ acknowledges that the regulations require a "more detailed assessment" of the four broad functional areas at steps four and five, R. 23, such an assessment is conspicuously lacking from his opinion. The ALJ included significant

mental limitations in his RFC formulation, limiting Plaintiff to simple routine jobs with low concentration and memory, needing one to two step tasks, with no decision making or judgment, no changes in work setting, little interaction with coworkers, and occasional supervision.[3] R. 23. However, at no point at steps four or five of the sequential analysis did the ALJ explain how these conclusions were reached or cite to any medical evidence of Plaintiff's mental health impairment. Nowhere does the ALJ conduct the required function-by-function analysis of Plaintiff's mental health explaining how her mental limitations affect her ability to work. *See Kozel*, 2012 WL 2951554, at *3-4. Aside from the conclusions in the RFC formulation itself, the ALJ does not even mention her depression or mental health impairments at steps four or five of the sequential analysis. This failure of explanation requires remand.

### b. The ALJ did not err by failing to subpoena or request additional mental health information to supplement the record.

Only when the record is inadequate does the ALJ have a duty to affirmatively seek additional information or supplemental evidence. *See Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (stating that the ALJ "has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record, and cannot rely on the evidence submitted by the claimant when that evidence is inadequate"). The main consideration is "whether the record contained sufficient medical evidence for the ALJ to make an informed decision regarding the claimant's impairment." *Lehman v. Astrue*, CIV. SKG-10-2160, 2013 WL 687088, at *8 (D. Md. Feb. 22, 2013). The ALJ does not have a duty "to supplement an

---

[3] Plaintiff suggests that the ALJ did not adequately explain what he meant by these limitations to the vocational expert. Pl.'s Br. 20-21. However, the vocational expert is highly trained and experienced, and "it is apparent from her testimony that [he] understood what the ALJ intended to convey." *Wilson v. Astrue*, No. SAG-12-313, 2013 WL 709824, at *3 (D. Md. Feb. 26, 2013); R. 101-06, 172-3. Therefore, there was no error in the manner in which the question was posed to the vocational expert. Plaintiff also raises a contradiction between the ALJ's finding at step three that Plaintiff has mild limitations in activities of daily living and at step four that she has moderate limitations. Pl.'s Br. 21. While it is unclear whether this was a typographical error, it cannot have prejudiced Plaintiff at step four because it reflects a more severe limitation.

9

adequate record to correct deficiencies in a plaintiff's case." *Id.* at *8. Therefore, a remand is appropriate when "the record is so deficient as to preclude the ALJ from making an educated decision as to the extent and effects of plaintiff's disability." *Id.*

The regulations use permissive language in outlining the steps the Commissioner takes to develop the record when there is insufficient evidence. They state that the Commissioner "will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (c)(1) through (c)(4) of this section." 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (2012). The regulations go on to list the actions that the Commissioner may take, using the terms "may recontact" a treating physician, "may request additional existing records," or "may ask [the claimant] to undergo a consultative evaluation." *Id*. The permissive language demonstrates an intention to grant discretion to the Commissioner in determining whether to request additional evidence.

Nonetheless, the Fourth Circuit has found that when a claimant is unrepresented there is a heightened duty on the part of the Commissioner to ensure that all of the facts of the case are fully explored. *Fleming*, 284 F. Supp. 2d at 272-73 (citing *Walker v. Harris*, 642 F.2d 712, 714 (4th Cir.1981)). The ALJ's failure to do so will result in remand when it causes prejudice to the claimant. *Id*. For example, this Court has remanded for failure to adequately develop the record where five months of hospitalization records following a claimant's car accident were absent from the record. *Id*. at 273; *see also Walker*, 642 F.2d at 714-15 (remanding where ALJ failed to ask an unrepresented claimant any questions during her hearing); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980) (remanding where ALJ was unaware of a claimant's former job duties and medical ailments, and no psychological examination was present in the record).

Plaintiff argues that the ALJ should have sought additional documentation of her mental health impairment. Specifically, she criticizes the ALJ for assigning little weight to the mental RFC assessment of Dr. Syed Rizvi because the doctor "gave no indication of what the opinion was based" on, did not cite to any treatment records, and did not indicate the extent of the treating relationship. Pl.'s Br. 17-18; R. 22. However, as discussed below, these are proper reasons under the regulations for assigning less weight to a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (2010). While it might have been reasonable for the ALJ to exercise his discretion and seek to further develop the record as to Plaintiff's depression, the Court does not find that the failure to do so warrants remand. According to Plaintiff's testimony, she only began seeing Dr. Rizvi one month prior to the hearing and the records provided here by Plaintiff were created after the hearing was held.[4] Pl.'s Br. Ex. 1; R. 55. Therefore, the purported omission is far less egregious than in *Fleming*, where five months of hospitalization records were missing from the record. Further, Plaintiff was represented by a non-lawyer representative at the hearing. R. 40. The representative spent a significant amount of time developing Plaintiff's hearing testimony and cross-examining the vocational expert. R. 41-64, 73-76. This is not a case where an unrepresented client was unable to significantly develop the record evidence of her impairments. The Court will not remand on this basis.

### c. The ALJ did not erroneously fail to classify Plaintiff's depression as a severe impairment.

Plaintiff alleges that the ALJ erred by failing to classify Plaintiff's depression as a severe impairment. Pl.'s Br. 13. However, an ALJ's failure to characterize a claimant's condition as severe at step two of the sequential evaluation process does not always warrant remand, even

---

[4] Plaintiff provides the Court with a Comprehensive Intake Assessment dated November 10, 2010, from Upper Bay Counseling and Support Services where Dr. Rizvi is employed. Pl.'s Br. Ex. 1. Plaintiff argues that the ALJ should have developed the record by obtaining this report, which is dated only 12 days prior to the issuance of the ALJ's decision.

when erroneous. Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. *Id*. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of *both the severe and non-severe impairments* at the subsequent steps of the process, including the determination of RFC. *See* 20 C.F.R. § 404.1523 (2010); SSR 96-8p, 1996 WL 374184, at * 5 (1996); SSR 86-8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. *See Thomas v. Commissioner, Soc. Sec. Admin.*, No. SAG-11-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); *Kenney v. Astrue*, No. CBD-10-1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

The ALJ did not find Plaintiff's depression to be a severe impairment at step two or even address why he declined to do so. R. 20-21. However, the ALJ appeared to consider Plaintiff's depression at subsequent steps of the sequential evaluation (even if his consideration at steps four and five was deficient in other respects). R. 21-23. As discussed above, the ALJ specifically mentioned Plaintiff's depression in the RFC formulation and included several specific mental limitations. R. 23. Therefore, any error in failing to classify Plaintiff's depression as severe at step two was harmless.

## II. The Lack Of Narrative Explanation In The ALJ's RFC Assessment Renders The Court Unable To Determine Whether It Was Supported By Substantial Evidence.

Plaintiff argues that the ALJ did not adequately explain how he formulated her RFC and how he weighed the opinions of the treating and non-treating sources. The Administrative Procedure Act ("APA"), which applies to all federal administrative agencies, requires ALJs to state their "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3) (2012); *see also Brown ex rel. McCurdy v. Apfel*, 11 F. App'x 58, 59 (4th Cir. 2001) (stating that the Social Security Act and the APA require ALJs to "include an explanation of what evidence, or inferences drawn therefrom, were relied on in arriving at a decision"). The Social Security Rulings require ALJs to provide a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The RFC assessment must always consider and address medical source opinions and explain why any opinion conflicting with the RFC assessment was not adopted. *Id.* In general, "if a reviewing court cannot discern 'what the ALJ did and why he did it,' the duty of explanation is not satisfied." *Davis v. Astrue*, CIV. JKS 09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 16, 2010) (quoting *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999)).

When weighing medical opinion evidence, the regulations require the Commissioner to give more weight to the opinions of treating sources, since they are "most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(d), 416.927(d) (2010). First, the ALJ is required to give the opinion of a treating physician controlling weight if it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in your case record." *Id*. If the ALJ finds that the treating physician's opinion is not entitled to controlling weight, the following factors must be applied to determine its proper weight: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with relevant medical evidence; (4) its consistency with the record as a whole; and (5) whether it is the opinion of a specialist regarding his or her area of specialty. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6) (2010). The Social Security Rulings emphasize that even when a treating source is not entitled to controlling weight it is still entitled to deference and must be weighed using all of the factors. SSR 96-2P, 1996 WL 374188, at *4 (July 2, 1996). A formulaic recitation of the factors is not required so long as it is apparent that the ALJ was aware of and considered each one. *Hooks v. Astrue*, No. 11-423, 2012 WL 2873944, at *8 (D. Md. July 12, 2012); *see also Burch v. Apfel*, 9 F. App'x 255, 259-60 (4th Cir. 2001). In addition, certain determinations are always reserved to the Commissioner because they are administrative findings and are dispositive of the case. 20 C.F.R. §§ 404.1527(e), 416.927(e) (2010).

      The duty of explanation in weighing medical opinion evidence is especially important where there are conflicting physician opinions. In such a case, the Fourth Circuit has required "explicit indications as to the weight given to all the evidence." *Sanderlin v. Barnhart*, 119 F. App'x 527, 528 (4th Cir. 2005) (per curiam) (citing *Gordon v. Schweiker,* 725 F.2d 231, 235 (4th Cir.1984)); *see also Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding where opinion contained no indication of why ALJ credited one doctor's opinion over another). The Social Security Rulings themselves require the ALJ to "explain how any material inconsistencies

or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

There is a glaring lack of substance in the ALJ's RFC evaluation and weighing of the opinion evidence at step four of the opinion. First, the ALJ summarized all of the medical evidence of record without any commentary or explanation as to how he was interpreting it or what weight he was assigning to the various medical opinions. R. 23-29. In the last two paragraphs, the ALJ merely states in a conclusory fashion that he "gave significant consideration to these opinions" and concludes that although "her status has waxed and waned throughout the period from her alleged date of onset," "there is no continuous period of 12 months wherein [she] could not perform at least a light range of exertional work."[5] R. 30. In the final paragraph, and without any explanation whatsoever, the ALJ merely lists the opinions to which he assigned great weight, leaving the reader to guess (by omission) which opinions he did not afford great weight. R. 30. At no point does the ALJ explain why he is not assigning controlling weight to Plaintiff's treating medical sources, nor does he mention the applicable regulations and factors for weighing medical opinion evidence. Notably, none of the opinion evidence on which the ALJ relies is dated after the amended alleged onset date of November 24, 2008, leaving the Court with no information as to how he weighed or evaluated the medical evidence from 2009 and 2010. *Id*.

This lack of explanation leaves the Court without an adequate understanding of how certain essential decisions were reached. For example, the ALJ concludes that Plaintiff is

---

[5] This is a misstatement of the "duration requirement" that is part of the five-step sequential evaluation process. While the regulations require that a claimant's medically determinable impairment meets the twelve-month duration requirement, a claimant is not required to establish that their RFC limitations last continuously for twelve months. *See supra*, Standard of Review; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404,1509, 416.920(a)(4)(ii), 416.909 (2010). On the contrary, a person whose functional limitations wax and wane such that they would be incapable of light work for several months out of a year would likely be unable to do light work on a "regular and continuing basis" as defined in SSR 96-8P, 1996 WL 374184, at *1.

capable of lifting ten pounds frequently and twenty pounds occasionally. R. 23. In support of this finding, the ALJ cites a functional capacity evaluation from November of 2008, completed by Plaintiff's physical therapist, Sonia Paquette. *Id.* However, the ALJ at no point acknowledges that Ms. Pacquette is not an "acceptable medical source" under the regulations, nor does he discuss the standard for weighing the opinions of such sources. *See* SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (providing instructions for weighing opinion of medical sources who are not "acceptable medical sources"). The ALJ does not explain why he gave less weight to other opinion evidence from medical sources indicating that Plaintiff is not able to lift ten pounds frequently or occasionally. *See* R. 337 (treating physician Dr. Avraam Karas's opinion in October of 2008 that Plaintiff should refrain from lifting anything over five pounds); 367 (state agency consultant Dr. Hakkarinen's RFC assessment in June of 2009 that Plaintiff could occasionally lift ten pounds); 402 (state agency consultant Dr. Serpick's RFC assessment in November of 2009 that Plaintiff could occasionally lift ten pounds). The ALJ also does not explain how he weighed a contrary physical therapy report from October of 2010, which indicated no ability for frequent lifting. R. 519.

In finding that Plaintiff can perform light work, the ALJ gives great weight to the opinions of Drs. Vincent Osteria and Dr. Michael Kaplan in May of 2008 that Plaintiff could perform "light duty work." R. 30. However, the ALJ does not acknowledge that this term as used by the doctors is not necessarily commensurate with "light work" as defined by the Social Security regulations. In fact, Dr. Karas in October of 2008 also limited Plaintiff to light duty work, which he defined as " a desk job or some work assignment where she can avoid lifting anything more than five pounds." R. 436. This is inconsistent with light work as defined by the regulations, which generally involves lifting twenty pounds occasionally and ten pounds

frequently as well as a good deal of walking or standing. 20 C.F.R. §§ 404.1567(b), 416.967(b) (2010). These reports create an inconsistency which the ALJ must address in detailed, not conclusory, fashion.

The portion of the ALJ's opinion documenting the RFC evaluation does not comport with what is required by the regulations. While a detailed summary of the medical opinion evidence of record is perhaps helpful (although not required), the ALJ's work cannot end there. Although "administrative verbosity" is not required, ALJs must conduct analysis and explanation that allows a reviewing Court to understand what conclusions they reached and why they reached them. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). Here, too much of the ALJ's RFC assessment was devoted to summary and not enough to analysis. It would be an "abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational" to affirm an ALJ's opinion that does not explicitly indicate the weight given to the medical evidence and what conclusions are drawn therefrom. *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (internal quotation marks omitted). Therefore, the Court will remand this case for a more adequate analysis and explanation.

**III.     The ALJ Did Not Err In Concluding That There Was A Significant Number Of Jobs Available In The National Economy Based On The Vocational Expert's Testimony.**

Plaintiff argues that the ALJ made two errors at step five of the sequential analysis. Plaintiff argues that the ALJ failed to support the conclusion that significant jobs that she could perform existed in the national economy and failed to provide the Dictionary of Occupational Titles ("DOT") classification numbers for the mailroom clerk and machine tender jobs. Pl.'s Br. 32-35.

The Commissioner bears the burden at step five of establishing that there are significant numbers of jobs in the national economy that the claimant can perform. *See supra*, Standard of

Review. The Commissioner need only establish that work exists in the region where the claimant lives *or* in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a) (2010). It does not matter whether work exists in the immediate area where the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied. *Id*. A number of jobs is only insignificant where it reflects isolated jobs existing in very limited numbers in relatively few locations outside of the region where the claimant lives. 20 C.F.R. §§ 404.1566(b), 416.966(b). There is no precise number that serves as a boundary between "significant" and "insignificant" numbers, and the ultimate determination must be left to the ALJ's discretion. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *Lawler v. Astrue*, No. BPG-09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011). The Fourth Circuit has found that 110 jobs or 153 jobs within the region constitute a significant number. *Hodges v. Apfel*, No. 99-2265, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (per curiam); *Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979).

Here, the vocational expert testified and the ALJ found that Plaintiff is capable of performing the job of mailroom clerk (non-governmental), of which 60,000 exist nationally and 300 exist regionally. R. 31. The ALJ also found that Plaintiff could perform the job of machine tender, of which 55,000 exist nationally and 175 exist regionally. *Id*. Admittedly, it is somewhat unclear from the ALJ's opinion whether these numbers include the 80-90% reduction which the ALJ found was warranted due to Plaintiff's functional limitations. However, the vocational expert's testimony clarifies that these are the already reduced figures. R. 72-73. Given the ALJ's discretion in determining whether significant jobs exist, the Court cannot say as a matter of law that the above numbers are insufficient. However, on remand these figures must be reassessed in light of a correct evaluation of Plaintiff's RFC.

18

As to Plaintiff's second argument, the ALJ is not always required to provide the DOT classification numbers when identifying the jobs that a claimant can perform. The Commissioner relies primarily on the DOT publication in making determinations at step five of the sequential evaluation process, but also relies on vocational experts to resolve complex vocational issues. 20 C.F.R. §§ 404.1566(d)-(e), 416.966(d)-(e); SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000). The DOT classification information is the result of extensive national study, and is therefore generalized by nature. SSR 00-4P, 2000 WL 1898704, at *2. The Commissioner is entitled to rely on a vocational expert "to provide more specific information about jobs or occupations than the DOT." *Id.* at *3. It is not a requirement that the ALJ rely upon or cite to DOT classifications. *See Smith v. Astrue*, No. 8:10-2624-CMC-JDA, 2012 WL 786853, at *3 (D.S.C. Mar. 9, 2012); *Ratliff v. Astrue*, No. 1:09CV00020, 2009 WL 5033926, at *4 (W.D. Va. Dec. 21, 2009). Therefore, the case need not be remanded on this basis.

## **CONCLUSION**

Based on the foregoing, the Court DENIES Plaintiff's Motion and DENIES Commissioner's Motion and REMANDS this matter to the Social Security Administration for further proceedings consistent with this opinion.

August 22, 2013   /s/
                  Charles B. Day
                  United States Magistrate Judge

CBD/ISA